MARK REGAN, Plaintiff v. AMERIMARK BUILDING PRODUCTS, INC. and CLEM FOX and MICHAEL WLOCK, Defendants

No. 9410SC401

(Filed 21 March 1995)

**Workers' Compensation §§ 62, 69 (NCI4th)— employer's intentional misconduct—failure to inform employee of lack of safety features—sufficiency of conflict**

Plaintiff's complaint was sufficient to state a claim against defendant employer based on *Woodson v. Rowland*, 329 N.C. 330, against his fellow employees who were his supervisors for willful and wanton negligence, and for punitive damages where plaintiff alleged that the design of defendant's paint machine made it dangerous to clean; plaintiff suffered serious injuries when his arm and body were caught in the paint machine as he attempted to clean the drum; defendants failed to inform plaintiff that the emergency switches on his machine were not functioning; and this particular machine had caused previous injury and deaths.

**Am Jur 2d, Workers' Compensation § 101.**

**What conduct is willful, intentional, or deliberate within workmen's compensation act provision authorizing tort action for such conduct. 96 ALR3d 1064, supp sec. 1.**

**Workmen's Compensation Act as furnishing exclusive remedy for employee injured by product manufactured, sold, or distributed by employer. 9 ALR4th 873, supp sec. 1.**

**Modern status: "dual capacity doctrine" as basis for employee's recovery from employer in tort. 23 ALR4th 1151.**

REGAN v. AMERIMARK BUILDING PRODUCTS

[118 N.C. App. 328 (1995)]

Appeal by plaintiff from order entered 25 February 1994 by Judge Henry V. Barnette in Wake County Superior Court. Heard in the Court of Appeals 13 January 1995.

*Glenn, Mills and Fisher, P.A., by Robert B. Glenn, Jr., for plaintiff-appellant.*

*Cranfill, Sumner & Hartzog, L.L.P., by David H. Batten, for defendant-appellee Amerimark Building Products., Inc., and Womble, Carlyle, Sandridge & Rice, by David A. Irvin, for defendants-appellees Clem Fox and Michael Wlock.*

LEWIS, Judge.

Plaintiff appeals from the trial court's dismissal of his case for failure to state a claim upon which relief could be granted. N.C.G.S. § 1A-1, Rule 12(b)(6) (1990). The issues on appeal are whether plaintiff has stated a claim against the defendant employer based on *Woodson v. Rowland,* 329 N.C. 330, 407 S.E.2d 222 (1991) or against the defendant co-employees based on *Pleasant v. Johnson,* 312 N.C. 710, 325 S.E.2d 244 (1985), and whether plaintiff's complaint is sufficient to state a claim for punitive damages.

For the purposes of reviewing a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must be taken as true. *Forbis v. Honeycutt,* 301 N.C. 699, 701, 273 S.E.2d 240, 241 (1981). According to the allegations in the complaint, plaintiff was employed by defendant Amerimark Building Products, Inc. (hereinafter "Amerimark") in Person County, North Carolina. The individual defendants were plaintiff's supervisors. Plaintiff oversaw a paint machine along a paint line at Amerimark. Plaintiff's job required that he periodically clean a steel drum by reaching into the paint machine and scraping the drum while the paint line continued to operate. Plaintiff suffered serious injuries on 7 April 1993 when his arm and body were caught in the paint machine as he attempted to clean the drum.

Plaintiff alleges that, prior to 7 April 1993, other employees of Amerimark had clothing, gloves, arms and legs caught in the paint machine and suffered serious injury and death. Plaintiff contends that Amerimark, in an effort to diminish the risk of injury or death, installed emergency cutoff switches for employees who got caught in the machine. The employees were instructed on the hazards of the paint machine and on the operation of the emergency switches.

Plaintiff alleges that at the time of his injury he was operating the paint machine and performing the cleaning operation. He believed the emergency switches were functioning properly. When plaintiff's hand was caught and pulled into the machine, he tried to stop the machine with the emergency switches only to find them inoperable. Plaintiff was injured as.described above.

Plaintiff alleges that defendants' actions were grossly negligent, willful, wanton, and constituted intentional misconduct, and were done with manifest indifference to the consequences, in that: (a) defendants failed to provide a fixed metal scraper or proper guarding, (b) defendants failed to maintain the emergency switches at plaintiff's station and chose to operate plaintiff's line without functional emergency switches, (c) defendants assigned plaintiff to perform his customary duties, including scraping the drum, knowing that the emergency switches were not functioning and without telling plaintiff that the switches were not functioning, and (d) defendants knew it was substantially certain that plaintiff would assume the switches were functional, would clean the drum, and, as a result, would be seriously injured or killed. Plaintiff further alleges that the defendants' actions were the proximate cause of plaintiff's injuries, and that plaintiff is entitled to punitive damages as a result of defendants' gross, reckless, willful, wanton, and intentional conduct.

According to N.C.G.S. § 97-10.1 and subsequent case law, the Workers' Compensation Act provides the exclusive remedy for an employee injured in a workplace accident unless the injury resulted from an intentional tort. N.C.G.S. § 97-10.1 (1991); *See Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 488, 340 S.E.2d 116, 120, *disc. review denied*, 317 N.C. 334, 346 S.E.2d 140, *and disc. review denied*, 346 S.E.2d 141 (N.C. 1986). However, in *Pleasant* and *Woodson* our Supreme Court carved out two exceptions to this rule and created causes of action against co-employees and employers respectively. In *Pleasant*, the Court held that an injured employee may pursue a civil action against a co-employee on the basis of willful, wanton and reckless negligence. *Pleasant*, 312 N.C. at 711, 325 S.E.2d at 246. In *Woodson*, the Court held that an injured employee may sue an employer for damages when the employer "intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees." *Woodson*, 329 N.C. at 340-41, 407 S.E.2d at 228.

A. *Woodson* Claim

We first address whether plaintiff has stated a cause of action under *Woodson* against defendant Amerimark. "Substantial certainty" under *Woodson* is more than the "mere possibility" or "substantial probability" of serious injury or death. *See id.* at 345, 407 S.E.2d at 231. No one factor is determinative in evaluating whether a plaintiff has stated a valid *Woodson* claim; rather, all of the facts taken together must be considered. *Mickles v. Duke Power Co.*, 115 N.C. App. 624, 628, 446 S.E.2d 369, 372, *disc. review allowed*, 338 N.C. 311, 450 S.E.2d 488 (1994).

Appellees argue that this case is indistinguishable from *Pendergrass v. Card Care, Inc.*, 333 N.C. 233, 424 S.E.2d 391 (1993). The plaintiff employee in *Pendergrass* was seriously injured when his arm got caught in a machine he operated. *Id.* at 236, 424 S.E.2d at 393.

Our Supreme Court upheld the trial court's dismissal of the claims against the co-employees finding that those allegations did not rise to the level of willful, wanton and reckless negligence under *Pleasant. Id.* at 238, 424 S.E.2d at 394. Since the plaintiffs failed to make out a *Pleasant* claim against the co-employees, the Court further held that the allegations were necessarily insufficient to state a claim against the employer under the higher standard of negligence required under *Woodson. Id.* at 240, 424 S.E.2d at 395.

Plaintiff's allegations, when taken as true, make out a sharper case than *Pendergrass* for application of the *Woodson* exception to the exclusivity rule. The allegations in *Pendergrass* focused on the design of a machine that had latent defects and violated OSHA requirements and industry standards. *Id.* at 236, 424 S.E.2d at 393. Here, although the design of plaintiff's machine made it dangerous to clean, the risk of injury was increased by the alleged failure of the corrective emergency switches. In addition, there were no allegations in *Pendergrass*, as there are here, that the particular machine had caused previous injury and deaths. *Id.*

Amerimark's alleged failure to inform plaintiff that the emergency switches on his machine were not functioning demonstrates a much higher level of indifference to employee safety than that alleged in *Pendergrass*. When plaintiff's allegations are taken as true, we find a *Woodson* claim is made against Amerimark.

### B. *Pleasant* Claim

Plaintiff alleges the same acts of negligence to support his claim against his co-employee supervisors Fox and Wlock as support his claim against Amerimark. We hold that plaintiff has alleged conduct sufficient to show the requisite and lower degree of willful, wanton, and reckless negligence of his fellow employees to survive a 12(b)(6) motion.

### C. Punitive Damages Claim

Plaintiff's complaint also alleges that plaintiff is entitled to recover punitive damages against defendants for willful, wanton and intentional acts. Plaintiff has alleged willful and wanton misconduct and has specifically requested punitive damages. This gives defendants adequate notice of plaintiff's claim for punitive damages. *See Shugar v. Guill,* 304 N.C. 332, 338, 283 S.E.2d 507, 510 (1981) (holding that the principles of notice pleading apply to punitive damages claims).

Plaintiff has alleged aggravated conduct under *Pleasant* and *Woodson* sufficient to state a claim for punitive damages.

For the reasons stated above, the order of the trial court dismissing plaintiff's claims against defendants is reversed.

Reversed and remanded.

Judges WYNN and MARTIN, JOHN C. concur.