TRIVETTE v. YOUNT

[366 N.C. 303 (2012)]

———————————

JOAN F. TRIVETTE AND TERRY TRIVETTE, HUSBAND AND WIFE V.
PETER EDWARD YOUNT

No. 32A12

(Filed 14 December 2012)

**1. Workers' Compensation— exclusivity—co-employee exception—school principal and secretary**

The trial court correctly denied defendant's N.C.G.S. § 1A-1, Rule 12(b)(1) motion to dismiss a negligence action against a school principal by a school secretary on the grounds that the exclusivity provision of the Workers' Compensation Act deprived the trial court of jurisdiction. Considered in light of the *Pleasant* exception to the Workers' Compensation Act (injury by a co-

employee), and the statutes applicable to school personnel, both plaintiff and defendant were co-employees of the Board of Education.

**2. Negligence— accidental discharge of fire extinguisher— willful, wanton, and reckless negligence—summary judgment**

The trial court erred by denying summary judgment for defendant in a negligence action by a school secretary against a principal arising from the accidental discharge of a fire extinguisher. Although defendant was placed on notice that plaintiff was worried for her health, fearing that her myasthenia gravis might recur if anything happened with the extinguisher, plaintiff had to meet the high standard of willful, wanton, and reckless negligence under the *Pleasant* exception to the workers' compensation exclusivity rule. The evidence, taken in the light most favorable to plaintiff, did not support an inference that defendant was willfully, wantonly, and recklessly negligent, or that he was manifestly indifferent to the consequences of an accidental discharge.

Justice TIMMONS-GOODSON concurring in part and dissenting in part.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, —— N.C. App. —— , 720 S.E.2d 732 (2011), affirming an order denying defendant's motions to dismiss and for summary judgment entered on 16 November 2010 by Judge Richard D. Boner in Superior Court, Catawba County. On 8 March 2012, the Supreme Court allowed defendant's petition for discretionary review of additional issues. Heard in the Supreme Court on 4 September 2012.

*Law Offices of Amos & Kapral, LLP, by Stephen M. Kapral, Jr. and T. Dean Amos, for plaintiff-appellees.*

*Doughton & Rich PLLC, by Thomas J. Doughton and Amy L. Rich, for defendant-appellant.*

EDMUNDS, Justice.

In this case, we consider the nature of the working relationship between Peter Edward Yount (defendant), the principal of William Lenoir Middle School, and Joan F. Trivette (plaintiff), who was a part-time secretary and office assistant at the school. Plaintiff claimed that she was injured on the job as a result of defendant's negligence.

**TRIVETTE v. YOUNT**

[366 N.C. 303 (2012)]

Although we find that plaintiff and defendant were co-employees, allowing plaintiff to sue defendant personally under the exception to the Workers' Compensation Act's exclusivity provision established in *Pleasant v. Johnson*, 312 N.C. 710, 325 S.E.2d 244 (1985), we nevertheless conclude that plaintiff has failed to present sufficient evidence to survive defendant's motion for summary judgment. Accordingly, we affirm the decision of the Court of Appeals affirming the trial court's denial of defendant's motion to dismiss, but reverse the decision of the Court of Appeals affirming the trial court's denial of defendant's motion for summary judgment.

On 24 October 2008, plaintiff was sprayed "about her head and upper body" when a fire extinguisher defendant was handling abruptly discharged. Following the incident, plaintiff filed a complaint against defendant, alleging gross negligence and loss of consortium on the part of plaintiff's husband, who is also a plaintiff in this case.[1] In her complaint, plaintiff alleged that defendant "willfully and wantonly engag[ed] in reckless behavior" when he was "joking and horse playing around with the fire extinguisher," causing it to spray her. Plaintiff further alleged that the spraying aggravated a pre-existing medical condition that had been in remission.

Defendant denied plaintiff's claim. On 8 October 2010, defendant filed a motion to dismiss under Rule of Civil Procedure 12(b)(1) in which he contended that the trial court lacked subject matter jurisdiction because the North Carolina Workers' Compensation Act ("the Act") provides the exclusive remedy for plaintiff's claim. In this motion, defendant also sought summary judgment, arguing that "the conduct alleged by the [p]laintiffs does not rise to the level of willful, wanton and reckless." The trial court denied both motions on 15 November 2010, and defendant appealed to the Court of Appeals.

In a divided opinion, the Court of Appeals majority first determined that defendant's interlocutory appeal affects a substantial right, allowing the court to consider defendant's arguments. *Trivette v. Yount*, —— N.C. App. ——, ——, 720 S.E.2d 732, 734-35 (2011). The majority then turned to the merits of defendant's motions and noted that, in most instances, the Act, N.C.G.S. §§ 97.1 to -101.1 (2011), is the exclusive remedy for an employee injured on the job. *See* N.C.G.S. §§ 97-9, -10.1 (together, "the exclusivity provision"). As a result of the

---

1. Plaintiff also filed a claim with the North Carolina Industrial Commission, seeking a remedy under the Workers' Compensation Act; that claim is still pending and is not before this Court

exclusivity provision, " '[a]n employee cannot elect to pursue an alternate avenue of recovery, but is required to proceed under the Act with respect to compensable injuries.' " *Trivette*, ___ N.C. App. at ___, 720 S.E.2d at 736 (quoting *McAllister v. Cone Mills Corp.*, 88 N.C. App. 577, 580, 364 S.E.2d 186, 188 (1988)).

The majority in *Trivette* correctly noted that this Court has recognized two exceptions to the exclusivity provision of the Act. *Id.* at ——, 720 S.E.2d at 736. The first exception arises when a co-employee acts in a willful, wanton, and reckless manner, allowing an injured plaintiff to seek recovery from the co-employee in a common law action. Pleasant, 312 N.C. at 716-17, 325 S.E.2d at 249-50. Under the second exception, if an employer "intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death" and that conduct causes injury or death, a plaintiff can pursue a civil action against his or her employer. *Woodson v. Rowland*, 329 N.C. 330, 340, 407 S.E.2d 222, 228 (1991). Because plaintiff did not allege a *Woodson* claim, the Court of Appeals considered only the applicability of the *Pleasant* exception to the facts at bar. *See Trivette*, —— N.C. App. at ——, 720 S.E.2d at 736. This inquiry required the Court of Appeals to determine whether defendant was plaintiff's co-employee, in which case Pleasant could apply, or plaintiff's employer, in which case the exclusivity provision of the Act would foreclose plaintiff's suit. *Id.* at ——, 720 S.E.2d at 736.

The majority observed that, although a school principal is statutorily classified as the " 'executive head of the school,' " N.C.G.S. § 115C-5(7) (2011), "executive" and "employer" are not synonymous terms. *Trivette*, —— N.C. App. at ——, 720 S.E.2d at 736. After reviewing several statutes relating to school administration and school administrators, the majority determined that a principal acts as the supervisor of the school, with duties that include overseeing office assistants such as plaintiff. Id. at ——, 720 S.E.2d at 736. The majority also noted that both defendant and plaintiff were paid by the local school board and were considered employees of the school board. *Id.* at ——, 720 S.E.2d at 736-37.

These factors led the majority to conclude that defendant "is more properly classified as [plaintiff's] 'immediate supervisor' " than as her employer, and thus defendant is plaintiff's co-employee for purposes of the Act. *Id.* at ——, 720 S.E.2d at 737. Concluding that the Pleasant exception applies, allowing plaintiff to pursue her negligence claim against defendant, the majority affirmed the trial court's denial of defendant's motion to dismiss. *Id.* at ——, 720 S.E.2d at 737.

The dissent disagreed with the majority's characterization of defendant as a "co-employee" and argued that the classification of a school principal should be similar to that of a superintendent because both are public officers who are agents of the school board. *Id.* at ——, 720 S.E.2d at 738-39 (Elmore, J., dissenting). The dissent would have held that, as an agent, the principal is an " 'alter-ego' of the school board" and thus should be considered plaintiff's employer. Id. at ——, 720 S.E.2d at 739. As plaintiff's employer, defendant would fall within the exclusivity provision of the Act. *Id.* at ——, 720 S.E.2d at 739.

Defendant appealed on the basis of the dissent, and we allowed his petition for discretionary review of additional issues. For the reasons that follow, we affirm in part and reverse in part.

[1] Because this appeal is from the trial court's denial both of defendant's motion to dismiss under Rule 12(b)(1) and of defendant's motion for summary judgment, we review de novo. *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012); *Harris v. Matthews*, 361 N.C. 265, 271, 643 S.E.2d 566, 570 (2007). We begin by considering defendant's argument that, as an agent of the local school board, he was plaintiff's employer. The parties agreed at oral argument that defendant was an agent of the board. *See also Abell v. Nash Cnty. Bd. of Educ.*, 71 N.C. App. 48, 53, 321 S.E.2d 502, 506 (1984) ("By statute and under traditional common-law principles, then, the superintendent and principal are agents of the board."), *disc. rev. denied*, 313 N.C. 506, 329 S.E.2d 389 (1985). However, defendant's status as an agent of the local school board is not dispositive of the question whether he was plaintiff's employer or plaintiff's co-worker for purposes of determining whether plaintiff may bring a *Pleasant* claim.

In the past, this Court has held that an agent of the employer fell within the Act's exclusivity provision. For instance, in *McNair v. Ward*, the plaintiff employee brought suit against his employer, the Locker Company, and Lorenz, the company's general manager. 240 N.C. 330, 330-331, 82 S.E.2d 85, 85-86 (1954). We noted that the Locker Company ran its business "through the agency of" the individual defendant Lorenz and found that, because Lorenz was "conducting [the Locker Company's] business," the Act's exclusivity provision prevented a suit against Lorenz. *Id.* at 331, 82 S.E.2d at 85-86. Similarly, in *Essick v. City of Lexington*, plaintiff's intestate was killed while working as an employee of defendant Dixie Furniture

Company. 232 N.C. 200, 200-01, 60 S.E.2d 106, 107 (1950). The plaintiff administratrix sued the City of Lexington and the Lexington Utility Commission, which successfully moved to have Dixie Furniture Company and Dixie employees Link and Taylor added as defendants. *Id.* at 205, 60 S.E.2d at 110. We found that Link, who was Dixie's treasurer, and Taylor, who was Dixie's plant superintendent, fell within the Act's exclusivity provision because they were conducting Dixie's business and, as a result, were entitled to immunity under the Act. *Id.* at 209-11, 60 S.E.2d at 113-14.

However, after these cases were decided, this Court created the *Pleasant* exception to the exclusivity provision. *See Pleasant,* 312 N.C. at 716-17, 325 S.E.2d at 249-50. In *Pleasant,* this Court, after observing that an injured worker may sue a co-employee for intentional injuries, concluded that "injury to another resulting from willful, wanton and reckless negligence should also be treated as an intentional injury for purposes of our Workers' Compensation Act." *Id.* at 715, 325 S.E.2d at 248. The analysis in Pleasant does not turn on a defendant's employment status as an agent vel non, nor could it, because allowing the Act's exclusivity provision to apply to agents but not to other co-employees would thwart Pleasant's purpose of placing the blame for willful, wanton, and reckless negligence on the tortfeasor, "where it belongs." *Id.* at 717, 325 S.E.2d at 249. Accordingly, the applicability of the *Pleasant* exception is not dependent on whether an individual defendant is an agent of the defendant employer, and we conclude that defendant's position as an agent of the local school board does not determine whether plaintiff's *Pleasant* claim can proceed.

We note that the dissenting judge argued that, because defendant was an agent of the school board, he "may also be classified as an 'alter-ego' of the school board" and, as a consequence of this relationship, defendant was plaintiff's employer. *Trivette,* —— N.C. App. at ——, 720 S.E.2d at 739. In his brief to this Court, defendant echoes this contention. However, despite the dissenting judge's interpretation of terms cited in *State ex rel. Utils. Comm'n v. S. Bell Tel. & Tel. Co.,* 326 N.C. 522, 523, 391 S.E.2d 487, 488 (1990), *see Trivette,* —— N.C. App. at ——, 720 S.E.2d at 739, agency and alter ego are distinct legal concepts. A principal-agent relationship is based upon delegation of authority from the principal to the agent so that the agent is said to be representing the principal, *see, e.g., State v. Weaver,* 359 N.C. 246, 258, 607 S.E.2d 599, 606 (2005), while alter egos are seen in the law as being the same entity, *see, e.g., Henderson v. Sec. Mortg. & Fin. Co.,* 273 N.C. 253, 260, 160 S.E.2d 39, 44 (1968). We reject the

**TRIVETTE v. YOUNT**

[366 N.C. 303 (2012)]

theory that defendant is an alter ego of the school board, not only because of the possibility that an alter ego school principal could expose the school board to unexpected liability, but also because such an interpretation considers neither the statutorily dictated hierarchical relationship between local school boards and principals, nor the role of the local superintendent, who interacts with both the principal and the local board on a day to-day basis. *See, e.g.,* N.C.G.S. §§ 115C-47 (duties of local boards of education), -276 (duties of local school superintendents), -288 (duties of school principals) (2011).

Having determined that defendant's agency relationship with the school board is immaterial to the issue at hand, we now consider whether defendant was plaintiff's co-employee. The record pertaining to the nature of the working relationship between plaintiff and defendant is meager. Plaintiff's deposition indicates that her duties consisted of answering telephones and performing secretarial work, while defendant's deposition states that plaintiff worked in a cubicle in the front reception area about twenty feet from defendant's office. Defendant characterized plaintiff as an assistant rather than a secretary. Although defendant mentions in his deposition that plaintiff "was a volunteer previous to me hiring her," the record before us is otherwise silent as to how she became an employee and we find no authority in the statutes allowing a principal to hire or fire those who work at his or her school.

Instead, N.C.G.S. § 115C-276(j) provides that "[i]t shall be the duty of the superintendent to recommend and the board of education to elect all principals, teachers, and other school personnel in the administrative unit." This expansive language indicates that "[e]very person employed in North Carolina's public schools—other than charter schools—is an employee of a local board of education." Robert P. Joyce, *The Law of Employment in North Carolina's Public Schools* 3 (2000) (footnotes omitted). Viewing the record in light of the statutes applicable to school personnel, we do not believe that plaintiff was employed by, or an employee of, defendant. Accordingly, when the alleged incident occurred, both plaintiff and defendant were employees of the Caldwell County Board of Education.

As noted above, defendant had supervisory authority over plaintiff. Defendant's ability to direct plaintiff's work and call upon her assistance is consistent with his role as "executive head" of the school. N.C.G.S. § 115C-5(7). The Court of Appeals has long

accepted, and we agree, that for purposes of the Act, supervisors and those they supervise are treated as co-employees. *See, e.g., Bruno v. Concept Fabrics, Inc.*, 140 N.C. App. 81, 87, 535 S.E.2d 408, 412 (2000) (observing that the individual defendant was "a supervisory employee over [the] plaintiff" and was the plaintiff's "co-employee"); *Echols v. Zarn, Inc.*, 116 N.C. App. 364, 375, 448 S.E.2d 289, 295 (1994) (finding that the individual defendant, a "supervisory employee," was the plaintiff's co-employee for purposes of the Act), aff'd per curiam, 342 N.C. 184, 463 S.E.2d 228 (1995), and abrogated on other grounds by *Mickles v. Duke Power Co.*, 342 N.C. 103, 110, 463 S.E.2d 206, 211 (1995); *Dunleavy v. Yates Constr. Co.*, 106 N.C. App. 146, 154, 416 S.E.2d 193, 198 (stating that a defendant "was merely a foreman and as such was [the decedent's] co-employee"), *disc. rev. denied*, 332 N.C. 343, 421 S.E.2d 146 (1992); *see also Abernathy v. Consol. Freightways Corp. of Del.*, 321 N.C. 236, 237, 362 S.E.2d 559, 560 (1987) (the plaintiff's supervisor assumed to be his co-employee). Consequently, we find that plaintiff and defendant were co-employees, that the trial court correctly denied defendant's Rule 12(b)(1) motion to dismiss on the grounds that the exclusivity provision of the Act deprived the trial court of jurisdiction, and that the Court of Appeals majority correctly affirmed the trial court on that issue.

**[2]** We now turn to defendant's motion for summary judgment. Defendant argues that, as a matter of law, plaintiff has failed to forecast evidence sufficient to establish a *Pleasant* claim. The *Pleasant* exception requires that a plaintiff establish that he or she suffered an injury as a result of the defendant's "willful, wanton and reckless negligence." *Pleasant*, 312 N.C. at 717, 325 S.E.2d at 249. Cases from this Court and the Court of Appeals indicate that the burden of proof is heavy on a plaintiff who seeks to recover under *Pleasant*. For instance, in *Pendergrass v. Card Care, Inc.*, the plaintiff, a Texfi Industries employee, was injured on the job when his arm was caught in a final inspection machine. 333 N.C. 233, 236, 424 S.E.2d 391, 393 (1993). Citing *Pleasant*, the plaintiff alleged that two other Texfi employees, the defendants Gibson and Lake, directed him to work at the machine, knowing the machine did not have the OSHA-required safety guards. Id. at 238, 424 S.E.2d at 394. The trial court allowed these defendants' motions to dismiss. *Id.* at 236, 424 S.E.2d at 393. This Court affirmed, finding that even if these defendants knew of the danger, no inference could be drawn that "they intended that [the plaintiff] be injured or that they were manifestly indifferent to the consequences" of the plaintiff's operation of a dangerous machine. *Id.* at 238, 424 S.E.2d at 394.

In *Echols v. Zarn, Inc.*, the plaintiff hurt her hand in a molding machine. 116 N.C. App. at 366, 448 S.E.2d at 290. The machine had a safety gate but the plaintiff alleged that the individual defendant, who was the plaintiff's supervisor, told her to reach under the safety gate to remove the parts produced by the machine, then demonstrated what she meant. *Id.* at 368-69, 448 S.E.2d at 291-92. Following the supervisor's demonstration, the plaintiff reached under the gate and the machine "caught," smashing her hand. *Id.* at 368, 448 S.E.2d at 291. Among other claims, the plaintiff alleged a *Pleasant* claim against the supervisor but the trial court allowed the individual defendant's motion for summary judgment. *Id.* at 366, 448 S.E.2d at 290. The Court of Appeals noted that "[e]ven if we assume that [the defendant supervisor] knew that reaching under the safety gate could be dangerous, we do not believe this supports an inference that [this defendant] intended that [the] plaintiff be injured or that [this defendant] was manifestly indifferent to the consequences of [the] plaintiff reaching under the safety gate." *Id.* at 376, 448 S.E.2d at 296. The Court of Appeals affirmed the grant of summary judgment, *id.* at 377, 448 S.E.2d at 296, and we later affirmed the Court of Appeals decision in a per curiam opinion. 342 N.C. at 185, 463 S.E.2d at 229.

In *Dunleavy v. Yates Construction Company*, the plaintiffs' decedent was killed when a portion of a trench collapsed and struck his head. 106 N.C. App. at 150, 416 S.E.2d at 195. One of the defendants, who was both a foreman and the decedent's co-employee, had left the area where the trench was being dug and a backhoe had excavated deeper than the defendant foreman anticipated. *Id.* at 155, 416 S.E.2d at 198-99. The decedent had not been issued a hard hat or other protective equipment. *Id.* at 150, 416 S.E.2d at 195. The trial court granted summary judgment for the defendant foreman on the plaintiffs' Pleasant claim and the Court of Appeals affirmed, finding that the defendant foreman's conduct, "although arguably negligent, was not willful, wanton, and reckless . . . [and] did not manifest reckless disregard for the rights and safety of the pipe crew, nor did it amount to the intentional failure to carry out a duty of care owed to the crew." *Id.* at 156, 416 S.E.2d at 199.

We turn now to the case at bar, in which the trial court denied defendant's motion for summary judgment. Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c)

(2011). The trial court considers the evidence in the light most favorable to the nonmoving party. *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004) (citation omitted).

In her complaint, plaintiff alleges that defendant's actions aggravated a preexisting medical condition. Other than the complaint, plaintiff's evidence before us consists of her deposition. According to this deposition, a student had pulled the safety pin on the fire extinguisher and sprayed it in a classroom. The extinguisher was brought into the area where plaintiff had her desk and defendant had his office. The next day, defendant picked up the extinguisher and put it on the corner of plaintiff's desk. Plaintiff asked defendant to remove it and told him several times to replace the safety pin, which plaintiff was "pretty sure" was still attached to the extinguisher. According to plaintiff, defendant scoffed, claimed the extinguisher would not go off, and continued to play with the extinguisher while joking with another secretary. Defendant had his hand on the extinguisher when it discharged. A fine powdery mist came out of the nozzle, which was initially aimed down, but moved up to point at plaintiff. The powder landed on plaintiff's "whole right side, front, part of [her] back." After the extinguisher discharged, defendant told plaintiff not to worry about it but plaintiff responded that she could not afford to get sick. Plaintiff also testified that defendant knew she had myasthenia gravis that was in remission. She stated: "We used to talk about it at work. And I explained to them—this was another reason I was upset with [defendant] with the fire extinguisher, because I told him, 'If you do anything to knock me out of remission,' that's what I was afraid of."

Interpreting this testimony in the light most favorable to plaintiff, we see that defendant was placed on notice that plaintiff was worried for her health, fearing that if anything happened with the extinguisher, her myasthenia gravis might recur. However, as the cases cited above indicate, even unquestionably negligent behavior rarely meets the high standard of "willful, wanton and reckless" negligence established in *Pleasant*. While the danger of immediate injury is obvious when a worker deliberately shows a co-worker how to evade the safety guards on heavy machinery, as in *Echols*, or allows a co-worker to excavate without safety gear, as in *Dunleavy*, the risk that the discharge of a fire extinguisher might cause a relapse of a neuromuscular disease is less apparent. Despite the assertion in the dissent that defendant created a hazardous environment and the fire extinguisher was "unsafe equipment," no evidence indicates that the extinguisher or its effluvium presented any danger, either immediate or

latent, and the record is silent as to whether the extinguisher bore any warning labels. Even if we assume that defendant knew that an unexpected discharge would be messy and unpleasant, we do not believe the evidence before us, taken in the light most favorable to plaintiff, supports an inference that defendant was willfully, wantonly, and recklessly negligent, or that he was manifestly indifferent to the consequences of an accidental outburst.

Accordingly, the trial court erred when it denied defendant's motion for summary judgment on plaintiff's *Pleasant* claim. In addition, because the loss of consortium claim of Terry Trivette is derivative of plaintiff's negligence claim, *see Nicholson v. Hugh Chatham Mem. Hosp., Inc.*, 300 N.C. 295, 304, 266 S.E.2d 818, 823 (1980), the trial court erred in denying defendant's motion for summary judgment as to this count. Therefore, the Court of Appeals erred when it affirmed the trial court's denial of defendant's summary judgment motion.

While plaintiff has stated a claim cognizable under *Pleasant*, she has failed to forecast evidence sufficient to withstand defendant's motion for summary judgment. Accordingly, we affirm the portion of the opinion of the Court of Appeals that affirmed the trial court's denial of defendant's motion to dismiss and we reverse the portion of the opinion of the Court of Appeals that affirmed the trial court's denial of defendant's motion for summary judgment. This case is remanded to the Court of Appeals for further remand to the Superior Court, Catawba County, for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

Justice TIMMONS-GOODSON concurring in part and dissenting in part.

I agree with the majority that plaintiff has stated a cognizable claim under *Pleasant v. Johnson*, 312 N.C. 710, 325 S.E.2d 244 (1985), however, I write separately because the majority has taken away from the jury the determination of whether defendant was willfully, wantonly, or recklessly negligent.

This Court has long held that intent and negligence are questions of fact to be determined by the jury. *See, e.g., Journey v. Sharpe*, 49 N.C. (4 Jones) 165, 167 (1856) (stating that "intent is a matter of fact to be submitted to the jury"); *see also Lamb v. Wedgewood S. Corp.*, 308 N.C. 419, 425, 302 S.E.2d 868, 871 (1983) ("Negligence claims are rarely susceptible of summary adjudication, and should ordinarily be

resolved by trial of the issues." (citing *Vassey v. Burch*, 301 N.C. 68, 73, 269 S.E.2d 137, 140 (1980))). "We have emphasized that summary judgment is a drastic measure, and it should be used with caution. This is especially true in a negligence case in which a jury ordinarily applies the reasonable person standard to the facts of each case." *Williams v. Carolina Power & Light Co.*, 296 N.C. 400, 402, 250 S.E.2d 255, 257 (1979) (citations omitted); *see also Rouse v. Pitt Cnty. Mem'l Hosp., Inc.*, 343 N.C. 186, 191, 470 S.E.2d 44, 47 (1996) ("Summary judgment is a drastic measure, and is rarely appropriate in negligence cases." (citation and internal quotation marks omitted)). Furthermore, "summary judgment is inappropriate where reasonable minds might easily differ as to the import of the evidence." *Marcus Bros. Textiles, Inc. v. Price Waterhouse, LLP*, 350 N.C. 214, 223-24, 513 S.E.2d 320, 327 (1999) (citing *Page v. Sloan*, 281 N.C. 697, 706, 190 S.E.2d 189, 194 (1972)).

We cannot say as a matter of law that defendant's conduct did not rise to the level of negligence required under *Pleasant*. The majority here relies on cases in which supervisors ordered employees to perform work-related tasks with unsafe equipment or under unsafe conditions. *See Pendergrass v. Card Care, Inc.*, 333 N.C. 233, 424 S.E.2d 391 (1993); *Echols v. Zarn, Inc.*, 116 N.C. App. 364, 448 S.E.2d 289 (1994) aff'd per curiam, 342 N.C. 184, 463 S.E.2d 228 (1995); *Dunleavy v Yates Constr. Co.*, 106 N.C. App. 146, 416 S.E.2d 193 (1992) *disc. rev. denied*, 332 N.C. 343, 421 S.E.2d 146. Those cases involved hazardous work, such as operating industrial machinery or excavating trenches, and the plaintiffs in those cases failed to show that the defendants intended to scare or injure the employees or that they were indifferent to workplace hazards. Here, in contrast, defendant created a hazard in the otherwise safe environment of a middle school office by "joking and horse playing around" with a fully charged fire extinguisher without its safety pin. Presumably, horseplay with such unsafe equipment was entirely unrelated to defendant's work as the principal of a middle school.

In *Pleasant*, this Court determined that a reasonable jury could find that the defendant was willfully, wantonly, and recklessly negligent when the defendant was "horse playing" and "intended to scare" his co-employee. *Pleasant*, 312 N.C. 710, 711 325 S.E.2d 244, 246. This is exactly the situation we have before us now. Here, taking the evidence in the light most favorable to plaintiff, the principal of a middle school was "joking and horse playing around" with a fire extinguisher. He knew the fire extinguisher was fully charged, and he

HIGH ROCK LAKE PARTNERS, LLC v. N.C. DEP'T OF TRANSP.

[366 N.C. 315 (2012)]

knew the safety pin had been removed. A scared woman with a known lung condition begged, him to "put the pin in the fire extinguisher and get it away from me." Defendant dismissed her warnings, declared "you're being such a baby," and continued taunting her until he triggered the fully charged fire extinguisher and sprayed her with a powdered chemical mixture.

Plaintiff has alleged and forecast, sufficiently to survive summary judgment, that, as in *Pleasant*, defendant was "horse playing" and "intended to scare" plaintiff. Was defendant willfully, wantonly, and recklessly negligent? That is a question about which reasonable minds might differ. It is a question for the jury. Therefore, it not appropriate to dispense with this question on summary judgment. I respectfully dissent.